15 years ago, Lee Malvo was tried, convicted, and sentenced for his role in the D.C. sniper attacks. Almost a decade later, Malvo sought federal habeas relief, relying exclusively on the new rule announced by this Court in Miller v. Alabama. But Miller's rule does not cover Malvo's case, and the lower courts erred in holding otherwise. I'd like to make three points, one about Miller, one about Montgomery, and one about why this matters. First, if Miller's holding isn't concerned with mandatory sentences, much of this Court's language in Miller makes very little sense. Miller repeatedly stated its own holding in terms of mandatory sentences, and the Court's States. Second, Montgomery must be interpreted both in light of Miller and in light of the facts that were before the Court. All of the defendants before the Court in both Miller and Montgomery had received mandatory sentences, and this Court should not lightly interpret a decision about retroactivity as having retroactively announced a new rule governing nonmandatory sentences. Finally, the reason why habeas is so formal and restrictive is because habeas is extraordinarily costly. Malvo's victims were already required to endure one full trial and sentencing hearing more than a decade ago, and the Court should not lightly ask them to go through another, particularly given that the original sentencing fully complied with then-controlling constitutional restrictions. I waive the remainder of my two minutes. So turning to the first point about Miller, I think it's just extremely hard, as Malvo's brief now clarifies, that he only sought habeas relief based on Miller. And if you look at Malvo's original habeas petition, it's on page 80 of the petition appendix, he doesn't just say that he's seeking relief based on Miller. He says he's seeking relief based on Miller's holding that mandatory life without parole violates the Eighth Amendment. So I think even Malvo, when he originally sought habeas in this case, recognized the precise nature of Miller's holding, and I think it's extraordinarily hard to get away from that. Ginsburg. Mr. Hitens, could we back up a little and explain to me why these sentences are not mandatory? I mean, the jury had only two choices, death or life without parole. And nobody seemed to have appreciated at the time of Malvo's convictions that there was any discretion. And the piece of information I'd like to have, has any Virginia judge ever reduced a juvenile life without parole to life with parole or a term of use? Justice Ginsburg, I'm not aware of any Virginia judge ever reducing a juvenile life without parole sentence for a person convicted of capital murder, which was the offense that Malvo was convicted of. I believe that it's factually true that I'm not aware of an example. There have been examples of Virginia courts considering whether to do so, although those long predate Malvo's. I acknowledge that those post-date Malvo's sentence. To go to your question about what the jury was instructed, that is what the jury was instructed, but Virginia law is extremely clear that the sentencer is not the jury. The sentencer is the judge. And under the Supreme Court of Virginia's holding in Jones 2, which Malvo does not and cannot challenge, this trial judge had the authority to suspend the sentence as a matter of State law. And not only had the authority to do it, but had the authority to do it at the time of Malvo's trial. That's the specific issue that the Supreme Court of Virginia addressed in Jones. And I think that's a binding holding as a matter of State law. Does the judge know he could, given that there was no history of doing it? I think that's the position of the SG in this case. But more fundamentally, the Fourth Circuit concluded, I quote them, Malvo's youth and attendance circumstances were not considered by either the jury or the judge to determine whether to sentence him to life without parole or some lesser sentence. Do you disagree with that statement? I think it's very hard to tell based on the record whether they were. I think the fairest description of the record is that there is no affirmative indication one way or another. All right. So tell me what the practical effect is, or why Montgomery and its language would have drawn a difference between a juvenile who was not sentenced to death because he was not incorrigible and a youth who, under a discretionary sentence, was sentenced not to death, to life without parole, even though the judge didn't think he was incorrigible but thought the crime was horrible. So that really is the nub of this case, which, given the language of Montgomery and Miller, does it make any sense to treat either of them differently? So, Justice Sotomayor, I think the first thing I'd say to that is I don't think that for Teague purposes we can say, given the language of Montgomery and Miller, I think we need to be very specific where the rule that we're talking about is coming from. And to address your question of what's the difference, I think the difference is stated in the last paragraph of the Miller opinion, where the Court fundamentally identifies the problem with the scheme invalidated in Miller. The Court said that the sentencer was deprived of, quote, the opportunity to consider youth and its mitigating factors, and instead that the States at issue in that case had required that all children receive life without parole sentences. As a matter of Virginia State law, that was not true here. General, this is maybe Justice Sotomayor's question phrased a little bit differently. Of course, Miller talks about mandatory schemes a lot because Miller was about a mandatory scheme. But do you think after Miller, in a state where there was not a mandatory scheme, a judge could say, you know what, I just don't feel like thinking about the defendant's youth. I don't think it's remotely relevant, and I'm going to just sweep away anything that the defendant presents to me about that. I couldn't care less. Do you think that that's permissible under Miller? Justice Kagan, I'm sorry. I don't think that would be permissible, but I think we need to distinguish between why that's not permissible. I think as a matter of the Eighth Amendment, that's not permissible. But I think the articulation of the cases following Woodson and the death penalty illustrate why that is a new rule for Teague purposes. So I think that if a court were properly presented with that argument after Miller, it should hold that that's an Eighth Amendment violation. But I think that would be a new rule for Teague purposes. And the way I know is how this played out in the capital context, right? So the Court first decides Woodson, which deals with a mandatory death penalty, very similar to Miller. And then the Court has a whole series of cases after Woodson, some of which really are very close to what you said, Justice Kagan, where the sentencer is not formally required to impose death, but says I'm not going to consider a youth. And the Court in later cases said that also violates the Eighth Amendment. But there was no suggestion that Woodson was not a violation of the Eighth Amendment. And I think Miller itself makes that clear. If there's anything that Miller says, I mean, all of Miller, it's a 30-page opinion, and it can be summarized in two words, which is that youth matters and that you have to consider youth in making these sorts of sentencing determinations. And again, of course, it talks a lot about mandatory schemes because a mandatory scheme was in front of it. But the entire reasoning was about how much youth matters and how a judge or a jury, whoever the sentencer is, has to take that youth into account. That's the lesson of Miller. So two responses to that, Justice Kagan. First, I do want to differentiate because I think the habeas context matters here. I agree with you that after Miller, the right interpretation of the Eighth Amendment is that the thing you describe would violate it. But I think under this Court's Teague jurisprudence, that doesn't resolve the question of whether decision two is a new rule. I mean, the Court has said ever since Teague that the definition of new rule is extraordinarily broad and includes anything that is not dictated by the earlier decision. And I just don't see how one can read Miller and conclude that a decision that describes its holding in terms of mandatory sentences dictates that Virginia's non-mandatory. So I think I've – we're just going to posit that I disagree with that. Okay. But suppose I didn't disagree with that. Then you also have to deal with Montgomery because that's the way Montgomery reads Miller. And Montgomery says that's what Miller said. It's not some later new rule. That's the rule for Miller, says Montgomery. I certainly acknowledge that Montgomery says that, Justice Kagan, but I don't think that's controlling for Teague purposes. And I think the Court has specifically actually confronted a case quite similar where that happened. The case – this is cited on page 17 of our brief. It's Butler v. McKellar, where a very similar argument was made and rejected in the habeas context. So that case, the first case was Arizona – it was, excuse me, Edwards v. Arizona, the one that says that when the defendant says he wants to talk to a lawyer, police can't go and talk to him without getting him a lawyer. And then seven years later, the Court in Arizona v. Roberson says that is true even if the thing you want to go back and talk to him about is a different crime. And in Roberson, the Court said, quote, our decision is controlled by Arizona v. Edwards. And then in Butler, in the habeas context, the Court said that was a new rule for Teague purposes. I just think that the argument that Montgomery clarified or confirmed or any of the language that the Fourth Circuit or the district court – Sotomayor, we couldn't, under Teague, have made Miller retroactive unless there was both a procedural and substantive rule. And so whether or not there are people who misread Miller or not, some courts did, a lot didn't, the substantive ruling of Miller was very clear that it rendered life without, I'm quoting it, parole, an unconstitutional penalty for a class of defendants – a class of defendants because of their status. That is, juvenile offenders whose crime reflect the transient immaturity of youth. It announced, it says, Miller announced a substantive rule of constitutional law. So it's not a new procedural rule. It's a new, it is an old substantive law that it's embodying. That's the distinction that I don't see. Your case, the one you cited, was applying it, not reading the old case. It was announcing a new take of that Montgomery said. We're telling you what Montgomery, what Miller said. Justice Sotomayor, I certainly don't disagree that there's language to that effect in Montgomery, but I think it is important that that language that you just quoted is virtually all from Montgomery and appears nowhere in Miller, except for a few words that are sort of included in that very long quote. Suppose I try to read Miller and Montgomery together to figure out what the substantive rule is, and that I conclude the substantive rule is that the state cannot impose life without parole on youth who are merely immature, but can impose it on those who are incorrigible. Okay? That's, suppose that's the substantive rule. I suppose Miller and Montgomery then, we have to figure out what the procedural rule attached to that was. Correct. The procedural rule attached, you can read it in a couple different ways, so I want to get your thoughts. One is it rules out an on-the-record finding, right? Montgomery says you don't have to make a record finding of incorrigible. It's explicit about that. The question then for me comes down to, is a discretionary sentencing regime alone enough to satisfy the procedural requirements to implement that substantive rule, or does there have to be something more on the record stated by the sentencing judge about youth? Justice Kavanaugh, I think certainly in the habeas context, that satisfies the state, the holdings of Miller and Montgomery. Now whether the court... With that being a discretionary sentencing regime? I'm sorry, yes. I apologize. And why is it, why is something more procedurally not required? We know a record, a finding of fact is explicitly ruled out by Montgomery, and that's very important. But why isn't something more than just a discretionary sentencing regime necessary? Well I think particularly because of the habeas context. So I'm not, I don't want to rule out the notion that the court couldn't in the further elaboration of the Eighth Amendment require such a thing. But I think in the habeas context, what's critical is that this trial and sentence occurred long before either Montgomery or Miller, and the court has emphasized that particularly in the habeas, I mean, Teague is not restrictive for the sake of being restrictive. Let me ask it this way. Do you think a discretionary sentencing regime is enough to satisfy the substantive Miller-Montgomery rule, as I posited, that you can't impose life without parole on someone who's merely immature as opposed to incorrigible? I would say that under existing law on collateral review, yes. Even if you know for a fact that the sentencer did not take youth into account? Well Justice Kagan, I guess first I would... It's a discretionary system. The sentencer could have taken youth into account, but he didn't. Justice Kagan, I just want to make sure if this is a hypothetical or if you're asking about the facts of this case. No, no, no, it's just a hypothetical. Okay. I just want to make sure because my answer would be different depending on... I have a follow-up hypothetical to the hypothetical. Okay. So if you know, if you know for sure, say because the sentencer specifically says on the record that they didn't, I think for purposes of Federal habeas review, the answer is still that that is not a cognizable basis for retroactively invalidating a conviction. I think on direct review, I think that person would have a very strong argument. I suspect that I would think that person's going to have the better of the argument, that the person's going to win. But that's because the way the Court's cases develop is in a piecemeal fashion. Okay. Now suppose the record does not have what Justice Kagan posited. The record as it is in 99.99 percent of the cases is youth is raised by the defense counsel and the sentencing judge either says nothing, just imposes the sentence without explaining anything about youth or just discusses youth but says ultimately still going to stick with life without parole. So in that circumstance, is that enough? Yes. And the reason is because as we explain in our... How do we know, and this is the tough part of the case for me, it's right on this. How do we know in that circumstance that the sentencing judge separated the incorrigible from the, I'm using these phrases shorthand, the merely immature? I think the best way we know that is because as our brief and the State's brief explains, in every single State that has a discretionary sentencing scheme, the sentencer is specifically instructed to consider age. And I think the Court, particularly in the habeas context, can presume that judges follow their obligation under State law. Is this one of those States where the sentencer is given a list of criteria that he's supposed to consider? Yes. The Supreme Court of Virginia in Jones 2 specifically articulates the factors that sentencers are supposed to consider, including in deciding whether to suspend a sentence, and one of those factors is age. It specifies in considering whether to suspend a sentence? I believe it does. This is, again, from the Supreme Court of Virginia's decision in Jones 2 that responds to this Court's GVR in light of Montgomery, and I believe they specifically say as a matter of State law. Yes. Judge, Jones 2 was many years after this sentencing took place. Absolutely, Justice Kagan, but Jones 2 critically did not purport to change or alter what Virginia law was. All of the statutes that are discussed in Jones 2 were on the books at the time of this sentencing. It's not like Virginia changed its law after its sentencing. What if we were unsure about that? Shouldn't we, even if you are correct on the law here, isn't there still a question of whether Virginia's regime was truly discretionary? Or do you think that's over? I apologize, Justice Kavanaugh. I think the Supreme Court of Virginia was very clear in Jones 2 about that. Thank you. Thank you, counsel. Mr. Fagan. Thank you, Mr. Chief Justice, and may it please the Court. Malvo is arguing that his life without parole sentences for his murders are retroactively invalid under Miller, even if Virginia law allowed him to seek a lower sentence based on his age. That's wrong for two reasons. First of all, the substantive retroactive holding of Miller is limited to mandatory sentences. Any objection Malvo has to the particular sentencing proceedings in his individual case would at best fall under what Montgomery describes as Miller's procedural component, which isn't retroactive. Second, all that procedural component requires is the opportunity to raise age as a reason for a lower sentence. Neither Montgomery nor Miller prescribes a precise formula for taking age into account, let alone requires a sentencer to consider age even when a defendant himself fails to put it at issue. Now, Justice Kavanaugh, you asked how we know that a discretionary scheme, the existence of a discretionary scheme, is sufficient to protect against the substantive right that Montgomery finds that Miller recognizes. I think we know that from a couple of different places. First, in Miller itself, I think the Court goes out of its way to compare and contrast discretionary schemes and mandatory schemes. I think you'll find this in particular at page 484 of Miller, noting that basically, as I read Miller, discretionary schemes are generally getting it right and mandatory schemes aren't. And I think it would be quite surprising that the kind of scheme the Court used as its baseline for comparison turns out, in fact, to be unconstitutional. But the second place we know it, I think, is from page 734 of Montgomery, where the Court says that the ability, and you combine that with page 735 that makes clear it's the opportunity to consider age, that the procedural component of Miller, which is the opportunity to consider age, is what protects the substantive right. And if, as the Fourth Circuit supposed, and the Virginia Supreme Court held in Jones II, Malvo actually did have the opportunity to seek a lower sentence based on his age, then I don't think he can recast his claim as a substantive claim under Miller that he had his substantive rights violated. And his opportunity came from what? So his opportunity came from the fact that the Virginia Supreme Court, again, Your position on whether this should, in fact, be considered a mandatory or discretionary scheme under Miller. We are just assuming, along with the Fourth Circuit, and I think as Justice Kavanaugh's recent questioning got at, we do think this should be remanded if the Court agrees with us for some further exploration of the nature of Virginia's scheme. But assuming that this was a discretionary scheme, Jones II, the Virginia Supreme Court's decision in that case says that a defendant in Malvo's position, and Jones was, I think, similarly situated to Malvo in this respect, was able to seek suspension of all or part of a sentence on any ground, including youth. And if that is correct, and if that is sufficient for a scheme to be considered discretionary under Miller, then I don't think he has a claim under Miller. What he might have, I suppose, is a very untimely, ineffective assistance of counsel claim, although I'm not even sure he would succeed on the merits of that. But we don't usually excuse defendants from their failure to raise particular considerations and decide that their substantive rights have been violated for that reason. As Justice Kavanaugh noted, in 99.9 percent of these cases, youth is going to be raised, and that's because everyone realizes that youth is important when you are sentencing someone to life without parole. You want us to hold that a discretionary regime satisfies Miller and Montgomery and remand for consideration of all these things, forfeiture, whether it was really discretionary? That's correct, Your Honor. That's our only submission in the case, is that you should reverse the Fourth Circuit on its view that even if, contrary to the Virginia Supreme Court's view – sorry, even if, consistent with the Virginia Supreme Court's view, this is a discretionary scheme, then he would have a Miller claim. But, again, and this is the same question that I asked Mr. Hytens, if it's a discretionary scheme, a judge could simply say, well, I don't think that that consideration matters at all. I refuse to consider it. And you think that Miller does not have anything to say about that? No, I think our answer to that is a little bit different from General Hyten's answer. I do think Miller, as it's currently written, and Montgomery would say that a procedural right has been violated in that case. But what we have here is a question of retroactivity. And that's a procedural – what you're talking about is a procedural right that I think Miller does require at least the opportunity to consider age. And given its analogy to cases like Eddings against Oklahoma and Lockett against Ohio, I think the sentencer can't decide that legally youth has no weight. Right. So let's assume that. And, in fact, Miller says several times, not just requires an opportunity to consider, but requires consideration. And then what Montgomery does, as I understand it, is Montgomery makes clear that that procedural requirement is in service of a substantive requirement. In other words, it's in service of a substantive rule, and that rule is the one that Justice Kavanaugh made reference to, which is the rule that the irretrievably corrupt and only those people can be subject to life in prison without parole. So the requirement of consideration is in service of the substantive rule that says except for the irretrievably corrupt, you can't sentence a juvenile to life without parole. So, Justice Kagan, let me give you the sort of short answer to your question, then I have a slightly longer answer. I think the shorter answer to your question is, yes, the procedural right protects a substantive one, but because it's a procedural right, it's not retroactive. The only thing that is retroactive under Montgomery is what Montgomery describes itself to be considering, and this is on page 732. It says that what it's considering is whether Miller's holding that precludes mandatory sentences of life without parole for juvenile offenders is retroactive. No. Montgomery says Miller's holding that only the irretrievably corrupt can be sentenced to life without parole. That's what Montgomery says. And that's, you know, in fact, it's taking language from Miller and saying that's the substantive rule that comes out of Miller, which is this distinction between those who commit crimes based on transient immaturity, blah, blah, blah. So this gets at my somewhat longer answer, Justice Kagan, which is that, you know, as we acknowledge in our brief, I think it's very difficult to completely square some of Montgomery with the language in Miller, which I think is very clearly focused on mandatory sentences. And to the extent that the Court has to preference some language over other language, we'd urge the Court to preference the language that adheres to the common scenario in both cases, which involved only mandatory sentences. Maybe I thought, keep going, keep going. The other thing I would say about the particular paragraph on which we're focusing here is I think it makes more sense if you view Montgomery as really being focused on mandatory sentences, which is all anyone was thinking about in the case. I think what Montgomery is trying to do in that paragraph is to fit Miller's holding, which, again, Montgomery recognizes in several places is limited to mandatory sentences, into the language that this Court has used to describe substantive rules. And it does so in a kind of unique way. It describes the boundaries of the class of defendants who are benefited under Miller using the procedural language of what a sentencer who sentences under a discretionary scheme would necessarily need to find. The terms transient immaturity and irreparable corruption come from earlier cases like Roper and like Graham, where they're used descriptively, not prescriptively, to describe the kind of judgment a sentencer necessarily makes in imposing this kind of sentence on a juvenile. That's just to say you wish Montgomery was a different opinion. It's not a different opinion. It creates the test that it creates based on the language in Miller, which you're right, was based on the language in Roper. So there's a chain of decisions. But there's a clear rule that comes out of it, which is this distinction between the irretrievably corrupt and all others. Well, Your Honor, I don't think it's an especially clear rule, in part because it kind of, if I may use the word, fudges a little bit the way this Court's described substantive rules by describing it in procedural terms. Usually, you describe a class by reference to some objective fact, like what crime the defendant — Sorry. The objective fact is the incorrigible. So, Your Honor, I think —  the — Those are the people who you cannot sentence in a certain kind of way. Well, Your Honor, I think — and Justice Kavanaugh was just getting at this — it's not really an objective fact. It's a judgment that someone's going to have to make. But that's the category. That's — I'm done. I guess I'd just finish with the thought that Montgomery's framing of this, I don't think, is particularly problematic if it's limited to the only context anyone was considering in that case, mandatory sentences. But it becomes very problematic if the language is extended to invalidate all life-without-parole sentences under discretionary schemes. Ms. Fagan, I would like to ask you about the government's change in position, because as I understood it, the government originally argued that Juvenile's sentence to life without parole must be resentenced after Miller and Montgomery, whether life without parole is mandatory or imposed as a matter of discretion. That was the position that the government took, and most of the lower courts are in accord with it. What led to the S.G.'s change in position? Well, a couple things, Your Honor. First of all, as our brief notes, that wasn't invariably our position. That was our position in the Mejia-Velez brief that Malvo cites. But in other briefs, we took a position that is more consistent with the one we are taking here. And to the extent that we have changed our position here, it's because it's very difficult, as I've acknowledged, to reconcile the language of Montgomery and Miller. And it's not something that we'd lightly ask lower courts to do as a matter of clarification. We try to follow the letter of this Court's decisions. I think this Court has, frankly, somewhat more leeway to kind of explain what it had in mind in Montgomery, which I think were only the discretionary sentences — excuse me, mandatory sentences — that were actually at issue in that case. Thank you, counsel. Ms. Minnelli. Mr. Chief Justice, and may it please the Court, Miller and Montgomery control this case. The Warden and the United States have just conceded that in order to rule for them, this Court would have to discard the reasoning of Montgomery. Miller held that before imposing life without parole on a juvenile, a sentencer must consider how the characteristics of youth counsel against that sentence. That individualized sentencing hearing, as Montgomery explained, effectuates the Eighth Amendment rule that life without parole is an excessive sentence for most juveniles, those who are not permanently incorrigible. Miller is not limited to mandatory schemes where life without parole is the only possible punishment. It invalidated those schemes because they guarantee that courts won't consider whether youth warrants a lower sentence, which creates an unacceptable risk of excessive punishment. But when a court has the theoretical power to consider a lower sentence but doesn't do so, which is what happened here, it creates precisely the same risk, as the Warden admits in his reply brief. And I'd like to correct some of the statements about what actually happened at the sentencing hearing here, because this is important. Malvo was sentenced in 2004. That was not only before Miller, it was before Roper. The prosecutor sought a death sentence for him. The issue before the jury was, should he be sentenced to death or life without parole? That was the only issue they were allowed to decide. At the sentencing hearing before the judge, which is extremely short, it's eight pages at the end of the joint appendix, there was no consideration at all of imposing a sentence less than life without parole. And until a footnote in his reply brief, the Warden hadn't contested that. It's pretty hard to contest. The notion that, you know, somehow, somehow Miller was satisfied by, you know, the opportunity, you know, the theoretical opportunity to consider youth when it wasn't actually considered, simply can't be squared with the language of Miller itself, or the language and reasoning of Montgomery. That argument you're making, that argument you're making is about the Virginia scheme and get to that, I think. But there's an initial question about what Miller and Montgomery mean. And you heard my question about the substantive rule being something that separates the incorrigible from the merely immature. And the procedural rule, particularly articulated in Montgomery, is you don't need to make a finding of fact. A discretionary regime satisfies it. And my question to you is, why isn't a discretionary regime, and I know you disagree that Virginia is such a thing, but we'll put that aside for the moment, why isn't a discretionary sentencing regime enough procedurally to satisfy the substantive rule articulated in Miller and Montgomery? Because the substantive rule, which I think you, I agree with your articulation, the substantive rule requires that in order to ensure that juveniles don't receive an unconstitutionally disproportionate punishment, a court must consider the characteristics of youth and must make a determination as to whether that juvenile... Okay, can I, I'm sorry to interrupt, but this is important. You said two things there, must consider, and you said must make a determination. The both opinions definitely say consider over and over again. Consider or take into account are the words used over and over, assess used a few times. It never says make a determination. Neither opinion ever, I think, says make a finding of fact. It does not say make a finding of fact. I agree with that. Okay. And then the question becomes, if a discretionary regime suffices to allow consideration, isn't a discretionary regime sufficient to satisfy Miller and Montgomery? No, it's not. In this case, actually, let's just stick to the broader question. Yeah. Miller makes very clear that sentencers must actually consider the characteristics of youth and determine whether life without parole is a proportional sentence for the individual defender. I'm going to stop you again. I'm sorry. But in most sentencing regimes, as you well know, throughout the country, in a variety of sentencing courts, judges are required to consider all sorts of factors by state law. And arguments are raised to the state court judge, the trial judge, about all sorts of factors. The judge will often impose sentence without marching through a checklist of all those factors, yet it is routinely accepted that the judge has, quote, considered the factor if it has been raised or even if it's required as a matter of state law. There are lots of state cases and federal cases that say, so long as the issue's been raised, we assume the judge, quote, considered it. Now, if that's true, and you can disagree with that, but if that's true, doesn't a discretionary regime where the argument can be raised necessarily satisfy Miller and Montgomery's requirement of consideration? No, it doesn't. And let me explain why, in this particular case, it doesn't. Because this was decided not, this, he was sentenced not only before Miller, but before considered the factors that weren't even articulated in the first instance by this court until much later. I may or may not agree with that. Assume going forward, a sentencing judge, though, in a discretionary sentencing regime is presented with arguments that you should not sentence this juvenile to life without parole because of his or her youth, and then explains that. The judge then sentences the juvenile to life without parole. In that circumstance, has the judge considered the youth? It's possible that that could be sufficient under Miller. One would have to make a determination looking at the record whether there was some judgment made that life without parole was, in fact, the proportionate sentence for that juvenile. Well, there is a line in Miller that says, and this is the one they hang their hat on, that Miller did not impose a formal fact-finding requirement. That Miller did not impose, this is from Montgomery. Yes. That Miller did not impose a formal fact-finding requirement does not leave states free to sentence a child whose crimes reflect transient immaturity to life without parole. So there's a substantive right. Precisely, Your Honor. If your crime was of transient immaturity, not to be sentenced. Now, presumably, what I think my colleague, and he can correct me if I'm wrong, is saying, in a discretionary sentencing moving forward after Jones, courts know that they have to take age and youth into account. Correct. So it's like now, 3553 of the Federal Criminal Code requires a laundry list of things for judges to consider. Most judges do not tick off each one of those. Doesn't say, I find this, but I don't find that. I don't do this, I don't do that. Most judges just say, I've thought of them all, and this is my answer. Now, I think what Justice Kavanaugh, he's shaking his head yes is, in that kind of system, assuming that this was a post-Jones case, not a pre-Jones case, for which there's some ambiguity, why isn't that system enough? Are you requiring a formal fact-finding? Are you saying, as long as it's clear that the judge knew that he had to find incorrigibility, and that was argued before him, and he didn't have to say, I find it, but he sentenced the person to parole, that you assume he knows what he's doing? That in the absence of those arguments, that then you're not sure, and the substantive right should trump? I'm not sure how you- So, if we were dealing with a situation in which there was a statute that mirrored the requirements that Miller set out, it would be a completely different case. That is not what we have here. The judge was not required to consider youth- But a lot of the state statutes, and this is what I think is concerning some of my colleagues, have since Miller said, it's discretionary now. Yes. Courts don't have to do mandatory life, and they should consider age. Now- That's correct. I must admit that I read Jones, but I don't remember if Jones said, age must be considered in light of Miller- It did not say that. Or in light of Montgomery's substantive rule. It did not say that. All right? But that's the assumption being made. Yes. What are you asking for all of those other systems, post-Jones, that let or tell judges to consider age, but don't say in accordance with Miller and Montgomery? Don't we presume that they know the law and follow it? Going forward, yes, I agree. If a judge sentences a juvenile under one of the post-Montgomery statutes that sets out the factors that are articulated in Miller and Montgomery, then yes, I think it might be reasonable- That sets those out and requires courts to evaluate them? Precisely, yes. As opposed to, for example, either that doesn't set them out or that just, you know, permits courts to do whatever they want? Yes. Right? And there are different kinds of nonmandatory schemes. I apologize. Well, no, I don't know which one you are interrupting, but it sets them out like in 3553. Is that the sentencing considerations? Well, it's- Is that enough? Here are the things you need to consider, and transient youth or incorrigibility is one of them. If there is a statute that expressly sets out these factors, and if the judge considers that- And requires the courts to consider them. And requires the courts to consider them, then we can presume that the judge followed the law and did so. But this is not a case where the judge was required to consider anything. And, in fact, she did not consider imposing any lesser sentence than life without parole. And the warden's position and the United States' position is that that's good enough. Back on Justice Kagan's question for a second, in a discretionary regime where the defense counsel, in any case where juveniles facing life without parole is a possibility, is of course, I would think you would agree, any competent defense counsel is going to argue the youth to the sentencing judge. Do you agree with that? Going forward, yes. Yes. Okay. And, therefore, can't you presume, and don't we do this as Justice Sotomayor was indicating, I'm not putting words in her mouth, but in 3553A cases, we also presume when something's been argued to the sentencing judge that the judge has, quote, considered, unquote, that factor? Yes. And let me be clear. I don't think this Court needs to say anything about how to handle cases going forward after Miller where there is a requirement that the judge consider the Miller factors. The question here is, does Miller apply? Can Malvo invoke? I think we have to say what Miller and Montgomery, well, I don't know what we have to do. But we might want to say what Miller and Montgomery mean as they rule together because that's been a lot of the focus of the brief. So we may have to indicate what is the substantive rule and what is the procedure and then we can figure out. Yes. Well, I mean, the substantive rule is that the Eighth Amendment forbids States to impose life without parole on juveniles who are not permanently incorrigible. And that's the holding of, that is the holding of Miller. That is, that is what Montgomery. Well, can, could Montgomery change Miller? Montgomery, in Montgomery, the issue was whether Miller was retro, whether the, the rule adopted in Miller was retroactive to cases on collateral. Doesn't it have to take Miller as it stands? Can it change that? It shouldn't and it didn't. What Miller. If it didn't, then we can disregard whatever Montgomery said and look at what Miller said. Where does Miller say what you say that it says? It says it. It says exactly what it held. It says we hold, we therefore hold that the Eighth Amendment forbids a sentencing scheme that mandates life imprisonment without possibility of parole for juvenile offenders. That was, that, that was the holding. That was the result. There is also the reasoning that was necessary to that result. That wasn't the holding? When they say we hold, that wasn't? It was certainly part of the holding, but the Court also said we require a sentencer to take into account how children are different. And the reason that it requires that is in order to effectuate the Eighth Amendment prohibition on disproportionate sentences for juveniles. Counsel, if, if there were a requirement of a fine, a substantive right to a finding of incorrigibility before the sentence of life without parole were permissible under the Eighth Amendment, wouldn't it follow also that there's a Sixth Amendment right under Apprendi to have a jury decide that rather than a judge? I don't think that necessarily would follow. How? I, I think that... Anytime we increase a sentence, a statutory maximum or otherwise of sentence, we say jury, we, this Court has said a jury has to make that finding. There's a, there's actually a split of authority. There's no indication of any of that in Montgomery or Miller, is there? Agreed. There's a, there's a split of authority on this question. There's a pending cert petition that raises it. We don't have any position on it. Well, the Court has held several times, if you increase the, the, the statutory permissible range of penalty, a jury has to be involved, right? I mean, that's not... Yes, so it depends on... There's no circuit split on that. It depends on how you conceptualize it. But, you know, that's clearly not one of the issues that's before the Court in this case. Um, and I'm not arguing, just to be clear, that there is a requirement of a specific factual finding. Montgomery said there wasn't, but what it also said is, um, there has to be a hearing that separates juveniles who may constitute... Right. And a hearing, if Montgomery, if the right, if the substantive right is that you cannot do life without parole for an incorrigible youth, there has to be a hearing and somebody has to make a finding about that. It's not just a matter of discretion anymore. It's a matter of a factual finding. It's not a sentencing factor. It's, it's a finding. And I would have thought, in those circumstances, we might have specified who would do that finding and how that hearing would be conducted under, consistent with the Constitution. Well, that, that issue was not resolved in Miller or Montgomery, and I don't think it needs to be resolved today. Isn't that a further strike, though, against your interpretation of Miller and Montgomery, that the Court would have created a new substantive right that implicates the Sixth Amendment and not ever said so? Or even hinted at it? Or even acknowledged the question? Um, I actually don't think that's unusual. It happens, you know, it happened with some regularity that a right will, a new rule will be announced, and then later, the issue of, you know, who makes this decision, a jury or a judge, will come up. That's what happens in Atkins. It's a pretty big issue, though, right? I mean, you know, the, the judge or the jury, you know, if we're creating a new substantive right, we might want to say a few words about, hey, there's an issue whether the judge should do it or the jury should do it, and we'll take that up in the next case. Um, that is what happened with Atkins. Atkins is very similar to this case in that it barred the imposition of the death penalty on the intellectually disabled. As in this case, there needs to be a procedure to sort out the intellectually disabled from those who are not. And the question arose after Atkins, um, does that determination have to be made by a judge or a jury under Apprendi? And the majority of courts, the, that I know of, the majority have said, no, it doesn't have to be made by a jury. Um, it, it can be made by a judge, and states have allocated that determination in different ways. Um, so it's not at all unusual that the Court wouldn't have addressed the Apprendi issue in these decisions. But, I mean, to return to Justice Kavanaugh's question about procedure and substance, the two necessarily go together. The, the necessary procedure has to effectuate the substantive rule, and therefore, as Montgomery says, it has to, it has to involve, um, a determination as to whether life without parole will be a proportionate sentence for that particular defendant. But we know, we know it doesn't require a formal finding, right? That, that, that is correct. It doesn't require, it doesn't require any particular form of words. It does require a substantive result. Well, you said it requires a determination. And to me, that sounds like a formal finding. And the one thing we do know is that a formal finding is not required. So it would seem that, um, consideration, uh, and I thought we had gotten that far before, sort of it being included with respect to factors that must be considered in, uh, uh, imposing a sentence. We were talking about 3553, which has a list of things that have to be considered, and this would be, be one of them. Yes. And again, we, you know, we're not presented here with the question of what exactly a fact finder would have to say. Well, you are, because I, because I asked it. I'm sorry, Your Honor. I apologize, Mr. Chief Justice. What I, what I meant is, you know, that is, that is going to be an issue no matter how the Court decides this case. There have already been 2,000 resentencings under Miller at which courts have made an effort to apply the Miller factors. Um, there is, Montgomery did not specify, um, a turn of phrase or a specific finding that has to be made. But what's absolutely clear is that the Court does have to decide whether in light of the characteristics of youth, this is a proportionate, life without parole is a proportionate sentence for this particular defendant. And that didn't even come close. I don't think Montgomery, I don't think Montgomery says decide. I mean, decide, to pick up on the Chief Justice's question, sounds like determination, sounds like finding. Maybe, maybe I'm. Well, what it, what it says, what it says is, um, a hearing where youth and its attendant characteristics are considered as sentencing factors is necessary to separate those juveniles who may be sentenced to life without parole from those who may not. You know, it then goes on to say, no, we didn't require a specific finding of fact. You know, we are leaving it to the States to. It doesn't even say specific. It just says finding of fact. Correct. It just says finding of fact. Um, but it then says that Miller did not impose a formal fact-finding requirement. Doesn't leave States free to sentence a child whose crime reflects transient immaturity to life without parole. So Montgomery doesn't provide a lot of guidance, but what we do know is that juveniles are entitled to at least one opportunity to show that they are not permanently incorrigible and that it is not right to make a determination now that they are foreclosed from ever attempting to show that they have changed. And your argument that Virginia did not provide that is? It absolutely did not provide that. There was no — so let's assume that Jones was correct and that there was an ability to request suspension. That was not even remotely clear at that — at the time. Let's say it was, hypothetically. Then what? If it was clear that he could request suspension, I still don't think it would matter, because a suspension hearing is not a Miller hearing. At the time, Roper hadn't even been decided. I understand that, but let's just say, hypothetically, that it was available to the defendant to argue whatever he wanted with respect to his youth and attendant characteristics in any fashion that he wanted, and that the judge had to consider whatever arguments were presented about youth before imposing a life sentence, and that the judge could not impose that life sentence automatically. Let's say that's the state of the law in Virginia, hypothetically. Now, we don't — maybe we don't know that, but let's just assume that, that all arguments are available, not just incorrigibility. Any arguments about youth are available. Even better for the defendant, all of it has to be considered. Then what? What Miller requires, however, is not — is not only a hearing that requires that youth be considered. Youth is considered in all kinds of contexts, but there — Miller's specific holding is that the characteristics of youth that were identified first in Roper need to be considered in order to determine whether or not life without parole is a proportionate sentence. And I'm positing — I'm positing a hearing, counsel, in which all of that is available to the defendant to argue. Then what? I mean, it was available to him to argue in the sense that, you know, every new rule is available to the defendant to argue before the rule is announced. In fact, you know, he had no way of anticipating that — that this new constitutional rule would be announced. The Court hadn't even taken the first step down the road toward that. So, you know, even if it were the case that he absolutely could have gotten the same consideration had he, you know, been able to look into the future, that is not what we typically require defendants to do. And that's why the Miller rule is retroactive in the first place. Sotomayor We're in an awkward place because of what the Virginia court did with Jones, which is sort of look at something retroactively and say, this is what you could have done. There's a lack of clarity whether judges understood they could have done that. But let's move forward after Jones. And Jones is after Miller and Montgomery, correct? Correct. So it's now they're saying judges can have complete discretion just the way that Justice Gorsuch has posited. Moving forward, they should consider age and all its attendant circumstances. Why would that system, moving forward — I'm not looking backwards — if someone is at the hearing to argue incorrigibility, or the lawyer argued it and the judge didn't say one way or another, what I posited earlier, he just said, I've considered all the factors they told me to consider in Jones, X sentence. Well, first, Jones did not say that courts had to consider age in light of Miller or that they had to consider age at all. What it held is Miller is completely inapplicable in Virginia because we have a, quote, discretionary system. I — oh, I have to read Jones more carefully. Going forward, however — and going forward, Virginia is not doing anything to comply with Miller. So let's be clear. When Miller was issued, there were about 2,800 juvenile lifers in, quote, mandatory and nonmandatory schemes. Almost every State has already resolved this issue and complied with Miller and understood it the way we understand it. There are only 60 States, which only have 60 juvenile lifers, that haven't either made them parole-eligible or begun resentencing them in response to Miller. Sotomayor Did I mishear you? Did you say 60 States or 6 States? Six States with 60 juvenile lifers out of 2,800. That's — that is the scope of the problem that we're dealing with. But let's — if you could answer Justice Sotomayor's hypothetical, that would be very helpful to me as well. Let us assume that all arguments are available at hearing — at the hearing. And the defendant makes some, not others. I am not arguing that this right cannot be waived. Going forward, this is a known right. It can be waived just like any other constitutional right. Counsel, if I might. So just all arguments are available, and the district judge has to consider them. Would that, in your mind, satisfy Miller and Montgomery? It — it might very well. Okay. Yeah, I am — I am not arguing that it would not. We're only talking about the situation here, where there was no consideration of youth, not only with Malvo, but all 13 of the people who are serving juvenile life without parole for capital murder in Virginia were sentenced in exactly the same way. In none of those cases was there any meaningful consideration of a lower sentence, let alone consideration of whether youth made life without parole unconstitutional. In the only two cases where defense counsel raised the possibility of a lower sentence, the prosecutor said, absolutely not. Life without parole is the mandatory minimum sentence. So we know that — and — and we know, and the Fourth Circuit made a finding, and the district court made a finding to this effect, that youth was not considered in the way Miller requires. And — In what way was it necessary for the — the youth of your client to be considered? Do you think — do you describe him as a child who committed these crimes because of transient immaturity? I — I have not described him as a child who committed these crimes because of transient immaturity. Well, I thought that was the test that you're — that the Court has to apply, whether — whether it is a child who committed the crimes because of transient immaturity. The question is whether the juvenile committed the crimes based on transient immaturity or permanent incorrigibility. And what we are asking for is a hearing in Virginia court where the Virginia sentencer will make that determination. He has not had that hearing yet, the hearing that Miller and Montgomery require, and he is entitled to have one opportunity to make the case that he is not permanently incorrigible. Is not now or was not at the time? Well, I think by hypothesis, this is — you know, if one is permanently incorrigible, that's a permanent quality. So it certainly is relevant on resentencing what someone has done since they committed the crime. They may well have, you know, been able to provide evidence based on what they did after the crime that they are not, in fact, permanently incorrigible. So if he can demonstrate as a result of good behavior in prison, for example, that he has been rehabilitated, then he must be released? No. No. Absolutely not. That's one piece of evidence that the sentencer can consider. The sentencer then can decide what is the sentence going to be. And, you know, on resentencing, there are occasions when juvenile offenders are resentenced to life without parole. Even if he were given parole eligibility, that would not mean that he would be released. It would mean that he would have the opportunity sometime in the future to make the case to a parole board that he has changed. So we are nowhere near any prospect of being released. So, I mean, the court, the warden in the United States have made it extremely clear that they are asking this court to discard the reasoning of Montgomery. And there's absolutely no reason for the court to do that. All of the arguments that they've raised were also raised in Montgomery, and the court declined to adopt them. And it shouldn't change here. Thank you, counsel. General Hyten, three minutes. So I'd just like to address three points. What Miller requires, the shifting nature of Malvo's arguments, and why this matters. So I think Miller is quite clear what it requires, because it's in the very last paragraph of Miller. The court says on page 489, the judge or jury must have the opportunity to consider mitigating evidence. And, Mr. Chief Justice, you asked how do I know he had that opportunity. I can report Virginia Code 19.2264.4, which is in the red appendix at 3, says he had that opportunity. And the Virginia Supreme Court's decision in Jones says it at 795 S.E. 2nd at 722. They specifically say, quote, nor are we aware of any case in which a sentencing statute gave the juvenile offender the opportunity to present mitigating evidence, but the sentencing court arbitrarily refused to consider it. If there were such a case, we would not need the Eighth Amendment, because that would be reversed as a matter of course. And how about the case they cited where counsel did raise this argument about the youth, and the judge said, I have no power? I think that would be – first of all, that's not this case, because there was no such objection. Sotomayor, but it does provide some evidence, and that plus the history, that before Jones, there was no juvenile convicted of life without parole who was ever – whose sentence was ever suspended. But I think at most under Jones, that establishes that that individual was sentenced in violation of State law, not in violation of the Eighth Amendment, and that's not Mr. Malvo. Mr. Malvo never requested such an opportunity, and had he requested such an opportunity, he could have pursued – sorry. If he requested that opportunity, and the trial court refused to do it, he could then have appealed to the very same court that decided Jones too, and said the language that I just quoted. Breyer. The practical reading that I would give of these cases possibly, first case, you cannot sentence under a State law that's mandatory a juvenile to life without parole. Why not? Because nobody's really considered whether he's immature. So it's the reasoning, it's not this procedural, that's the reasoning. This case, they sentence him to life without parole, and the odds are greater than 50-50 that no one ever thought about whether he was, in fact, immature. Okay? Now, it sounds to me like the same case. Now, leaving all these words out of it, why isn't it the same case? I mean, I know, words like opportunity, da, da, da, da, da. But isn't there enough to say the odds are better than 50-50, no one ever thought about that? Well, Justice Breyer, I won't say opportunity then. I will say Teague. No, no. You can say anything you want. I'm just trying to get away from it. But you have an opportunity. Thank you. While you're rebuttal to say it. So I think under Teague, it's clear as day that for Mr. Malveaux to get retroactive relief, he needs a new rule. The only new rule he sought habeas based on was Miller, and most of his discussion today was about Montgomery. The Court should reverse. Thank you. Thank you, counsel. The case is submitted.